**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

TOMRA OF NORTH AMERICA, INC.,

                                    Plaintiff,

                                                        1:18-CV-1266
            v.                                          (LEK/DJS)

COUNT & CRUSH, LLC d/b/a/ CLYNK,
and COUNT & CRUSH (NY), LLC,

                                    Defendants.

**APPEARANCES:**                          **OF COUNSEL:**

WILSON, ELSER, MOSKOWITZ,          PETER A. LAURICELLA, ESQ.
EDELMAN & DICKER LLP               NICOLE HAIMSON, ESQ.
Attorneys for Plaintiff            ANDREW S. HOLLAND, ESQ.
200 Great Oaks Boulevard, Suite 228  CHRISTOPHER PRIORE, ESQ.
Albany, New York 12203             OLIVIA ORLANDO, ESQ.

NIXON PEABODY LLP                  ANDREW C. ROSE, ESQ.
Attorneys for Defendants
677 Broadway, 10th Floor
Albany, New York 12207

MARCUS, CLEGG, BALS &              GEORGE J. MARCUS, ESQ.
ROSENTHAL, P.A.                    DANIEL L. ROSENTHAL, ESQ.
Attorneys for Defendants
16 Middle Street, Ste Unit 501
Portland, Maine 04104

**DANIEL J. STEWART**
**United States Magistrate Judge**

## <u>MEMORANDUM-DECISION AND ORDER</u>[1]

Plaintiff TOMRA of North America ("TOMRA") "manufactures, leases, sells, installs, and maintains reverse vending machine systems" used in the recycling of used beverage containers ("UBC").  Dkt. No. 116-21, Argenio Decl., ¶ 4.[2]  "Defendants provide a recycling redemption service, whereby consumers 'bag' their recyclable materials and bring them to a redemption location (typically at a supermarket)."  Dkt. No. 120-1, Defs.' Resp. to Pl.'s Rule 56.1 St., ¶ 3.  The parties agree that they had a contractual relationship under which Defendants bought multiple machines from TOMRA to facilitate their business.  *See, e.g.*, *id.* at ¶¶ 6, 13, & 14.  Defendants have made certain payments to TOMRA for those machines, but TOMRA maintains certain amounts remain due and owing.  *Id.* at ¶¶ 23 & 24.  That led TOMRA to file an action in New York State Supreme Court alleging *inter alia*, breach of contract.  *See* Dkt. No. 2.  Defendants removed the action to this Court based on diversity of citizenship, Dkt. No. 1, and filed counterclaims regarding breach of warranty and recission.  Dkt. No. 25, Am. Answer.

Plaintiff has now filed a Motion to Dismiss Defendants' Counterclaims under FED. R. CIV. P. 12 and for Summary Judgment under FED. R. CIV. P. 56.  Dkt. No. 116.  Defendants oppose the Motions, Dkt. No. 120, and Plaintiff has filed a reply.  Dkt. No. 129. Despite the heated exchange of rhetoric between the parties in their briefing, this case is, in fact, quite straightforward.  What the voluminous record created by the

---

[1] The parties have consented to have the undersigned address all proceedings in this matter under 28 U.S.C. § 636(c)(1).  Dkt. No. 109.

[2] The Court will refer to TOMRA's vending machines simply as "the machines" throughout this opinion.

submissions establishes beyond doubt is that questions of fact predominate that requires denial of the Motions.  Given that discovery is now closed, the matter will be added to the Court's trial calendar.

## I.  FACTUAL BACKGROUND

Through a series of written agreements, the parties entered into a contractual relationship under which Defendants purchased ten of TOMRA's machines.  Defs.' Resp. to Pl.'s Rule 56.1 St. at ¶ 6.  The agreements took the form of a "Proposal and Technical Specifications for Automated Depot System" and are dated between December 2015 and August 2016.  Dkt. No. 116-22.  Neither party disputes that these agreements constituted binding contracts.  Defs.' Resp. to Pl.'s Rule 56.1 St. at ¶ 13 Generally stated, the agreements each provided a summary of the equipment that was subject to the agreements, set forth the pricing and payment details, discussed related service agreements, and provided certain "Specifications" for the product.  *See*, *e.g.*, Dkt. No. 116-22 at pp. 2-7.  Most relevant for present purposes, those specifications included stating that the equipment was designed for "Counting, sorting and capturing electronic bag detail" and stated that counting accuracy was 99%.  *Id.* at p. 6.

The contracts were the result of extensive discussions between the parties about what Defendants were seeking to purchase.  *See*, *e.g.*, Dkt. No. 129-3, Pl.'s Resp. to Defs.' Rule 56.1 St. at ¶¶ 15-16 & 18-24.  Following these discussions, the parties entered into the contracts and all of the contracted-for machines, were delivered by TOMRA and put into operation by Defendants between April 2016 and September 2016.  *Id.* at ¶ 92.  Beginning in July 2016, Defendants began to communicate to

TOMRA concerns about the performance of the machines.  *Id.* at ¶ 98.  Significant factual disputes exist about what exactly was discussed, what TOMRA understood about what Defendants' expectations were, how and why certain design choices were made and the effect they may have had on the reported issues, and various other technical details underlying the operation of the machines.  Despite these disputes, the parties agree that there were issues with the machines and they engaged in extended efforts to resolve the issues.  *See*, *e.g., id.* at ¶¶ 106-109.  This went on for several years.

Pursuant to the terms of the contracts, TOMRA has regularly billed Defendants for the cost of the machines and Defendants periodically made payments to TOMRA. Defs.' Resp. to Pl.'s Rule 56.1 St. at ¶¶ 22-23.  The full amount of the cost of the machines has not been paid, though Defendants now deny that that amount remains due and owing.  *Id.* at ¶¶ 24-25.

TOMRA commenced this lawsuit asserting claims for (1) breach of contract; (2) account stated; (3) quantum meruit; and (4) a claim for replevin.  Compl. at ¶¶ 9-46. Defendants counterclaimed for breach of warranty and rescission.  Am. Answer at pp. 5-7.  Defendants allege that TOMRA's machines failed to perform in accordance with the express and implied warranties made by Plaintiff, specifically as they relate to the accuracy of the machines.  *Id.*

## II.  RULE 12(c) MOTION REGARDING DEFENDANTS' COUNTERCLAIMS

Plaintiff's Motion first seeks dismissal of Defendants' counterclaims under Federal Rule of Civil Procedure 12(c).  Dkt. No. 116-30, Pl.'s Mem. of Law at pp. 13-16.

### A. Legal Standard

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (overruled on other grounds by *Davis v. Scherer*, 468 U.S. 183 (1984)).

### B. The Alleged Insufficiency of Defendants' Pleadings

Plaintiff argues that Defendants' breach of warranty claims must be dismissed on the pleadings because they fail to adequately allege that Defendants provided notice to Plaintiff of the alleged breach.  Pl.'s Mem. of Law at pp. 14-15.[3]  Plaintiff also alleges that this counterclaim is "conclusory and facially insufficient."  *Id.* at p. 15.

---

[3] The parties do not expressly address what the controlling law is for purposes of this diversity action, though they do cite almost exclusively New York caselaw suggesting that they believe New York law controls.  *See Axis Ins.*

While the Court does not disagree that Defendants could have pled these claims in greater detail, that is not the standard by which this Motion must be judged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (evaluation of pleadings requires only that "complaint must contain *sufficient* factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (internal quotation omitted) (emphasis added); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."). It is also clear, however, from a review of the extensive summary judgment record before the Court, that, even assuming the legal inadequacy of their pleading, Defendants would easily be able to amend the Complaint to amplify their pleading. *See* Dkt. No. 120, Defs.' Mem. of Law at p. 25 n.5 (requesting leave to amend if necessary). Though Plaintiff initially filed a Motion to Dismiss after the counterclaims were filed, that Motion was denied as moot in light of the filing of an Amended Answer, and significantly, Plaintiff did not renew its Motion in light of the now operative pleading. *See* Dkt. Nos. 21, 25, & 27. Given that nearly four years have passed, without apparent objection from Plaintiff regarding the sufficiency of the notice, Plaintiff could hardly claim to be prejudiced by such an amendment, *see generally* Fed. R. Civ. P. 15, and therefore, the interests of judicial economy support denial of this Motion.

The Court concludes that the counterclaims are sufficiently pled in any event. "[I]n order to assert a breach of express warranty claim under New York law, 'a buyer

---

*Co. v. Stewart*, 198 F. Supp. 3d 4, 10-11 (N.D.N.Y. 2016). Moreover, at an earlier stage of this litigation, this Court noted that New York law controls. Dkt. No. 41 at p. 11.

must provide the seller with timely notice of the alleged breach of warranty.'" *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 244 (S.D.N.Y. 2020) (quoting *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013)).  While much of the pleading Defendants now rely on with respect to the issue of notice is contained in their counterclaim regarding rescission rather than the warranty claims, *see* Am. Answer at pp. 6-7, Defendants allege repeatedly that the machines had "performance problems," that "Defendants documented performance inadequacies to Plaintiff," and that "Defendants put Plaintiff on notice that the ADS machines were nonconforming, [and] unsuitable for their intended purpose." *Id.* at p. 6.  For purposes of a Motion to Dismiss, the Court finds these allegations sufficient.[4]

Nor does the Court agree that the breach of warranty claim is conclusory.  The pleading requirements of the federal rules seek to provide adequate notice for the defendant as to a particular claim to defend itself.  *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995).  Those rules are designed to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555.  Plaintiff appears to have been on sufficient notice of the nature of counterclaim to have defended itself throughout lengthy discovery in this matter.  TOMRA sought discovery on issues it identified as "essential to . . . TOMRA's defenses with respect to the Counterclaims," *see*, *e.g.*, Dkt. No. 53-1 at p. 3, and the Court is not aware of TOMRA having raised any issue regarding inadequacy of notice

---

[4] The record raises significant questions in the Court's view about whether actual, timely notice was provided and so this question remains an issue for trial.

to this Court.  There also does not appear to be any real doubt that Plaintiff knew the breach of warranty claim involved, at least in part, Defendants' claim that the machines failed to meet agreed-upon standards for counting UBCs.

For these reasons, the Motion to Dismiss the warranty counterclaims under Rule 12(c) is denied.

### III.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff seeks summary judgment on each of its four causes of action, as well as, with respect to Defendants' counterclaims.  *See* Pl.'s Mem. of Law at pp. 4-12 & 17-37.

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant.  FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*,

21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant.  *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).  Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Breach of Contract and Related Warranty Counterclaims

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011).  The extensive record before the Court on Plaintiff's Motion establishes that the parties agree that they had a written contract for the sale and purchase of the machines.

Defs.' Resp. to Pl.'s Rule 56.1 St. at ¶¶ 13-14.   Beyond that, however, the parties differ significantly with respect to the precise scope of the contracts, particularly with respect to the extent to which TOMRA warranted their machines, and the performance of the parties in general.   *See id.* at ¶ 6.   Those disputes preclude this Court from granting summary judgment either as to Plaintiff's breach of contract cause of action or Defendants' counterclaims regarding implied and/or express warranties.

"[G]enerally . . . a motion for summary judgment may be granted in a contract dispute only when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning.  Ambiguity here is defined in terms of whether a reasonably intelligent person viewing the contract objectively could interpret the language in more than one way." *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008) (internal citations omitted).  "Contract terms are considered ambiguous if they are 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996)).  "If the contract is ambiguous, and if the opposing party proffers a reasonable interpretation and submits supporting extrinsic evidence over which there is a genuine dispute, summary judgment is precluded." *Auto Caravan Corp. v. Ins. Co. of N. Am.*, 1988 WL 74999, at *2 (S.D.N.Y. July 8, 1988).  The party seeking summary judgment, here that is the

Plaintiff, bears the burden of establishing that no genuine issue of material fact exists. *Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005). It has not carried that burden.

Inherent ambiguities exist in the contractual relationship between the parties that preclude summary judgment. In many respects, the critical issue presented in this case is the extent to which warranties, express or implied, formed a part of the contract in dispute and, if they did, what exactly they covered. *See* Dkt. No. 129-4, Pl.'s Reply Mem. of Law at p. 15 (identifying the issue of whether Plaintiff breached a warranty as "the question to which this entire case boils down."). Defendants contend that both express and implied warranties of fitness and merchantability exist. Defendants' first counterclaim alleges that "Plaintiff sold and delivered to Defendants . . . machines, designed and warranted to provide an automated device for counting, sorting and processing of returnable beverage containers, in accordance with Defendants' needs, which were known to Plaintiff." Am. Answer, Counterclaims at ¶ 1. Plaintiff denies this allegation. Dkt. No. 31 at ¶ 1. Defendants further allege that "[i]n each written contract, Plaintiff made express warranties." Am. Answer, Counterclaims at ¶ 3. Plaintiff also denies this allegation. Dkt. No. 31 at ¶ 3. While the record discusses minute details about exactly what assurances are contained in the agreements, what the parties did or did not understand about those assurances, and to what extent the machines did or did not meet those perceived expectations, the bottom line remains that the parties themselves do not agree as to the specific terms of the contracts at issue, including whether there were warranties in place at all. The mere existence of this

dispute presents a question of fact.  "Whether such a warranty exists is ordinarily a question of fact."  *Mazzuocola v. Thunderbird Prod. Corp.*, 1995 WL 311397, at *7 (E.D.N.Y. May 16, 1995).

Beyond this basic fact, questions of fact predominate with respect to the specific grounds on which Plaintiff seeks summary judgment here as to Defendants' warranty claims.

### 1. Counting Accuracy

The Court recognizes that "[a] contract is not ambiguous merely because the parties argue for different interpretations."  *Chiquita Int'l Ltd. v. Liverpool & London S.S. Prot. & Indem. Assoc., Ltd.*, 124 F. Supp. 2d 158, 164 (S.D.N.Y.2000).  Here, however, certainly when the evidence is viewed in the light most favorable to them, *see Donohue v. Hochul*, 32 F.4th 200, 206 (2d Cir. 2022), Defendants have presented "a reasonable interpretation," *Auto Caravan Corp. v. Ins. Co. of N. Am.*, 1988 WL 74999, at *2, of the scope of the contract sufficient to defeat summary judgment.

The parties agree that the contracts included specifications regarding "Counting, sorting and capturing electronic bag detail" and "Counting accuracy."  Dkt. No. 116-1, Pl.'s Rule 56.1 St. at ¶ 7; Defs.' Resp. to Pl.'s Rule 56.1 St. at ¶ 7.  They also agree that the terms "counting," "sorting," and "capturing" were never defined.  Pl.'s Rule 56.1 St. at ¶ 8; Defs.' Rule 56.1 St. at ¶ 8.  And they further agree that the agreements themselves do not contain any written reference to sorting or capturing accuracy.  Pl.'s Rule 56.1 St. at ¶¶ 9-10; Defs.' Rule 56.1 St. at ¶¶ 9-10.  According to Defendants, TOMRA warranted that the machines would do more than merely count containers, but

would accurately count UBCs and reject, where appropriate, containers with unreadable bar codes so that Defendants' accounts could be accurately credited.  *See* Dkt. No. 120-166 at p. 161.   Plaintiff denies that it made any such warranty and characterizes Defendants' position that counting accuracy includes "such functions as recognizing barcodes, reporting the correctly recognized barcodes, and properly handling the processed containers once the barcodes have been read" as a "skewed interpretation of the contract language."  Pl.'s Mem. of Law at p. 20.

For Defendants, "proper handling" included accurately crediting client accounts. It is far from clear that TOMRA had a meaningfully different view.  David Michaud, a project manager with TOMRA, characterized counting accuracy to include the idea that containers placed into a TOMRA machine "need to end up at the proper destination." Dkt. No. 120-232 at p. 3.  Defendants also clearly desired that the machines would do more than manually count UBCs placed into the machines.  TOMRA understood as much.  Ernest Argenio, a senior vice president at TOMRA, testified at his deposition that Defendants were using machines to count and identify the product being placed in the machines and he appeared to recognize that this was an important part of Defendants' business model.  Dkt. No. 116-8 at pp. 46-47.  He also testified that TOMRA's contract agreed to some measure of accurately capturing bar codes.  *Id.* at pp. 165-166. Michaud also testified that counting accuracy included correct bar codes being reported from the machine.  Dkt. No. 120-176 at p. 261.  Finally, Michaud testified that counting accuracy encompassed more than "simply count[ing]" the number of objects that passed through the machine.  *Id.* at p. 258.  The record also includes

internal TOMRA emails in which Argenio states "[w]e knew and agreed to the intended use when we sold them the units."  Dkt. No. 120-257 at p. 2.

Taken together, this evidence indicates that Defendants' understanding of the phrase "counting accuracy" is perhaps not as skewed as Plaintiff would like to project. Plaintiff appears to concede that Argenio and others within its organization expressed "equivocation and uncertainty" about how broadly "counting" should be interpreted. Pl.'s Reply at p. 20.[5]  If Plaintiff's employees were unsure whether counting extended as broadly as Defendants claim, it is very difficult to say that no question of fact existed about the scope of the contract.  The record establishes, at a minimum, that Defendants sought and believed they were getting machines that would do more than numerically count UBCs and that some of TOMRA's officials understood this.   Whether that understanding translated to the conferral of a warranty cannot be resolved on this record.

### 2. Custom Design

TOMRA also seeks summary judgment based on the theory that no implied warranties of fitness or merchantability exist when a product is custom designed for the buyer.  Pl.'s Mem. of Law at pp. 27-29.  This argument is not a basis for summary judgment.

---

[5] Mr. Argenio has offered testimony that at times supports Plaintiff's view of the contracts and at other times supports Defendants' purported understanding of the contracts.  In relying here on the latter evidence, the Court does not ignore the former, *see* Pl.'s Reply Mem. of Law at pp. 19-20, but notes that the record must be viewed in the light most favorable to the nonmovant.  *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d at 742.

In Plaintiff's view, an implied warranty does not arise when "the sellers, built the [equipment] according to the exact specifications of . . . the buyer." *Leahy v. Mid-W. Conveyor Co.*, 120 A.D.2d 16, 19 (3d Dep't 1986). *Leahy*, however, is factually and legally distinguishable from this case. *Leahy* involved a component manufacturer of a larger system while here TOMRA "manufactured the entire [machine], not a component part." *Zampardi v. Miller Johannisberg GmbH*, 1990 WL 68871, at *3 (E.D.N.Y. May 17, 1990). That it did so consistent with specifications from Defendants does not immunize it from liability. *Id.* In *Leahy*, the Appellate Division relied heavily on the fact that the manufacturer was not aware of the ultimate "plans and specifications for the entire system." *Leahy v. Mid-W. Conveyor Co.*, 120 A.D.2d at 19. Here, however, TOMRA knew of the purpose to which Defendants intended to put these machines. Dkt. No. 120-257 at p. 2. Because *Leahy*'s "rule is only applicable when the manufacturer is unaware of the intended use of its part," *Lent v. Signature Truck Sys., Inc.*, 2011 WL 4575312, at *12 (W.D.N.Y. Sept. 30, 2011), TOMRA is not entitled to judgment under its rule.

Nor, in any event, has TOMRA established that it was Defendants who "designed" the machines. In support of its argument, TOMRA cites the testimony of Clayton Kyle, Defendants' President, that "what we were designing with TOMRA we were being very specific about what we wanted and they were very specific about their ability to provide that." Dkt. No. 116-12 at p. 73. He further testified that "[t]hese machines were customized for [Defendants]." *Id.* at p. 181. However, prior to execution of the first agreement, officials at TOMRA engaged in extensive discussion

about specific machine configurations.  *See*, *e.g.*, Dkt. No. 120-196.  These discussions were clearly aimed in part to identify "items that we need to know about *in order to design a proper system*."  *Id.* at p. 2 (emphasis added).   This is consistent with Defendants' view that this case involves a custom configuration of existing technology by TOMRA to fit the needs of a client, rather than a custom designed product by Defendants.[6]  Nor is this a case like *Leahy* or its progeny in which an individual was hurt either as a result of a design defect or a failure to warn, but instead a claim that TOMRA was contracted (perhaps only allegedly) to provide a reverse vending machine capable of performing certain functions and that, at the end of the day, did not meet those expectations.

### 3. Notice of Breach and Proposed Remedies

TOMRA also maintains that summary judgment is appropriate both because Defendants did not timely present notice of the alleged breach of warranties and declined to take advantage of opportunities to prevent the claimed loss.  Pl.'s Mem. of Law at pp. 29-31.

As noted above, "[t]o assert a breach of warranty claim under . . . New York . . . law, a buyer must provide the seller with timely notice of the alleged breach of warranty."  *Quinn v. Walgreen Co.*, 958 F. Supp. 2d at 544; *see also* N.Y. U.C.C. § 2-607(3)(a) (requiring notice of breach be provided within "a reasonable time").  "Whether a time for taking an action required by this act is reasonable depends on the

---

[6] To the extent that Plaintiff seeks to avoid liability on the theory that machine errors were the result of Defendants' design choices, Pl.'s Reply at pp. 22-23, Defendants clearly dispute the basic facts underlying that contention.

nature, purpose, and circumstances of the action."   N.Y. U.C.C. § 1-205(a).  As a result, the question of the timeliness of such a notice generally presents a question of fact. *Patellos v. Hello Prod., LLC*, 523 F. Supp. 3d 523, 533 (S.D.N.Y. 2021) ("the timeliness of notice is generally a question of fact for the jury"); *Hubbard v. Gen. Motors Corp.*, 1996 WL 274018, at *4 (S.D.N.Y. May 22, 1996) (noting that "the sufficiency and timeliness of the notice is generally a question for the jury").

"The primary reason for requiring notice is to give the seller the opportunity to make adjustments or replacements, opportunities to minimize the buyer's loss and reduce the seller's own liability." *Besicorp Group, Inc. v. Thermo Electron Corp.*, 981 F. Supp. 86, 101-102 (N.D.N.Y. 1997).  Here, formal notice of an alleged breach admittedly came fairly late in the game, in April 2019.[7] Defs.' Resp. to Pl.'s Rule 56.1 St. at ¶ 52.  This was more than three years after Defendants began using the machines and several years after Defendants first reported problems with the machines in 2016. *Id.*  But Defendants made repeated reports to TOMRA over the subsequent months regarding issues they perceived with the machines' performance, Dkt. No. 129-3, Pl.'s Resp. to Defs.' 56.1 St. at ¶ 98, and the parties agree that in the interim they discussed ways to resolve the identified issues.  *See*, *e.g.*, *id.* at ¶¶ 116, 131, 153, 170, & 171.  In light of these facts, the parties each present reasonable arguments about when Plaintiff had sufficient notice of Defendants' claim that warranties had been breached and

---

[7] It has been suggested, however, that something less than a formal statement of breach may be all that is required. *See M.K. Assocs. v. Stowell Prod., Inc.*, 697 F. Supp. 20, 22 (D. Me. 1988).

whether that notice was made in a reasonably timely manner. Resolution of that question must await trial. *Patellos v. Hello Prod., LLC*, 523 F. Supp. 3d at 533.[8]

### 4. The Actual Performance of the Machines

Plaintiff also argues that summary judgment is appropriate on the implied warranty claims because "there is no question that the machines delivered to Defendants were of at least minimal level of quality, and were reasonably fit for the purpose for which they were intended." Pl.'s Mem. of Law at p. 31. It supports this position with citations to record evidence about the number of UBCs the machines processed while in operation by Defendants and their continued use of the machines. *Id.* at pp. 31-32.

"An implied warranty of fitness is created 'when a seller knows or has reason to know the particular purpose for which a buyer requires goods, and also knows or should know that the buyer is relying on his special knowledge.'" *Tears v. Bos. Sci. Corp.*, 344 F. Supp. 3d 500, 513 (S.D.N.Y. 2018) (quoting *Catalano v. BMW of North America, LLC*, 167 F. Supp. 3d 540, 558 (S.D.N.Y 2016)); *see also Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 896 (E.D.N.Y. 2018). As discussed above, evidence in the record supports Defendants' claim that TOMRA knew Defendants intended use for the machines was to do more than merely count UBCs. Dkt. No. 120-257 at p. 2. That they may have amply done that counting, therefore, sheds very little light on the broader question of whether the machines were fit for the more specific purpose Defendants purportedly sought. Despite Plaintiff's suggestion to the contrary, this Court has long

---

[8] Plaintiff's argument that is entitled to summary judgment because Defendants failed to properly avail themselves of solutions proposed by TOMRA to Defendants' concerns about the machines, Pl.'s Mem. of Law at pp. 29-31, involves many of the same factual questions.

understood this case to present exactly that dispute. A dispute, which as noted above, is fact dependent.

### C. Account Stated

When asserted alongside a breach of contract claim, an account stated claim must be pled in the alternative because "an account stated [claim] may not be utilized simply as another means to attempt to collect under a disputed contract." *Martin H. Bauman Assocs., Inc. v. H&M Int'l Transp. Inc.*, 171 A.D.2d 479, 485 (1st Dep't 1991). As a result, a "[d]efendant cannot be found liable on both an account stated claim . . . and a breach of contract claim . . . in connection with the same allegations of a failure to pay monies owed." *Wachtel & Masyr LLP v. Brand Progression LLC*, 2012 WL 523621, at *1 (S.D.N.Y. Feb. 15, 2012) (citing *Erdman Anthony & Assocs. v. Barkstrom*, 298 A.D.2d 981, 981 (4th Dep't 2002)).

As just discussed, questions of fact exist on TOMRA's breach of contract claim. Given that procedural posture, entering judgment for Plaintiff on this claim would have the effect of precluding its breach of contract claim. Summary judgment as to account stated claim, therefore, would be inappropriate at this time. Were the Court ultimately to find "Defendant[s] liable under Plaintiff's breach of contract claim, [they] may not be found liable on Plaintiff's account stated claim as a matter of law." *Arch Specialty Ins. Co. v. TDL Restoration, Inc.*, 2021 WL 1225447, at *10 (S.D.N.Y. Mar. 31, 2021)

(internal quotations omitted).  Summary judgment on this claim, therefore, is premature at this point.[9]

### D. Unjust Enrichment Claim

"Under New York law, claims for unjust enrichment and breach of contract are mutually exclusive." *Press Access LLC v. 1-800 Postcards, Inc.*, 2011 WL 6202887, at *3 (S.D.N.Y. Dec. 13, 2011), *aff'd*, 543 F. App'x 23 (2d Cir. 2013) (citing *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987)).  "Although such claims may be plead in the alternative where the plaintiff challenges the validity of the contract; they may not be plead in the alternative alongside a claim that the defendant breached an enforceable contract." *Quintanilla v. WW Int'l, Inc.*, 541 F. Supp. 3d 331, 353-54 (S.D.N.Y. 2021) (internal citations and alterations omitted); *see also Spinal Techs., LLC v. Mazor Robotics Inc.*, 624 F. Supp. 3d 330, 343 (W.D.N.Y. 2022) ("A contract and unjust enrichment claim may be pled in the alternative, but only if the validity of the [contract] is also questioned.") (internal citations omitted).  Plaintiff specifically pleads the existence of a contract, which it alleges Defendants breached. Compl. at ¶ 17.  And whatever else may be in dispute among the parties, they agree that they are parties to a contract for the sale of the machines.  Defs.' Resp. to Pl.'s Rule 56.1 St. at ¶ 13; Pl.'s Mem. of Law at p. 4 (noting that Defendants do not dispute the existence of a contractual relationship); Defs.' Mem. of Law at p. 19 (same as to

---

[9] "To prevail on a claim for account stated, a plaintiff must establish the following elements: (1) an account was presented; (2) it was accepted as correct; and (3) the debtor promised to pay the amount stated." *Yiwu Lizhisha Accessories Co. v. Jjamz, Inc.*, 336 F. Supp. 3d 179, 183 (S.D.N.Y. 2018), *report and recommendation adopted*, 2019 WL 2763841 (S.D.N.Y. July 2, 2019) (internal quotations, alterations, and citations omitted).  Many of the same factual questions already identified would preclude summary judgment in any event with respect to whether Defendants accepted as correct bills presented to them in light of the claimed machine deficiencies.

Plaintiff).   Given that, Plaintiff cannot maintain a claim premised on the absence of a

contract.   The Court, therefore, *sua sponte* dismisses Plaintiff's unjust enrichment claim.

*4Kids Ent., Inc. v. Upper Deck Co.*, 797 F. Supp. 2d 236, 249 (S.D.N.Y. 2011); *see also*

*ADYB Engineered For Life, Inc. v. Edan Admin. Servs. Ltd.*, 2022 WL 912127, at *7

(S.D.N.Y. Mar. 28, 2022).

## E. Defendants' Recission Counterclaim

Plaintiff also seeks summary judgment on Defendants' second counterclaim –

seeking recission of the contract.   Pl.'s Mem. of Law at pp. 10-12.   Plaintiff seeks

summary judgment on two grounds.   First, that Defendants' purported recission was

both untimely and unreasonable.   *Id.*   Second, that any impairment of the performance

of the machines was the result of Defendants' own conduct and cannot form the basis

for recission.   *Id.* at p. 12.   Neither is a basis for summary judgment.

A party seeking to revoke acceptance of products must do so within a reasonable

time.   N.Y. U.C.C. § 2-608(2) ("Revocation of acceptance must occur within a

reasonable time after the buyer discovers or should have discovered the ground for it").

In Plaintiff's view, Defendants' failure to seek revocation until 2019, after having

lodged complaints about the machines as early as 2016, establishes that the request was

untimely.   Pl.'s Mem. of Law at p. 12.   "What is a reasonable time is dependent on the

surrounding circumstances and is a question of fact."   *Campbell v. Bradco Supply Co.*,

194 A.D.3d 143, 149 (2d Dep't 2021); *see also Sec. Chimneys Ltd. v. McDowell*, 1992

WL 345073, at *5 (N.D.N.Y. Nov. 16, 1992), *aff'd*, 17 F.3d 391 (2d Cir. 1993).

Defendants have proffered several reasons for the delay in seeking formal revocation. Among the relevant considerations in the Court's view are the assertion by Defendants that the problems did not all arise at once and were sometimes intermittent, that the parties engaged in efforts to resolve the difficulties, which Defendant, at least believed would be ongoing, the practical difficulties of abandoning the TOMRA machines for different technology, and the ongoing reliance on joint efforts by the parties to identify and remedy problems. *See* Defs.' Mem. of Law at pp. 22-23. Although the Court is skeptical, these reasons may have given Defendants reasonable cause for delaying notice of revocation to TOMRA. For example, while "[r]evocation of acceptance is untimely and unreasonable when a buyer continues to use goods purchased from a seller and treats them in a manner inconsistent with revocation after it becomes clear that the deficiencies in the goods cannot be cured to the buyer's satisfaction," *Freidman v. Gen. Motors Corp.*, 721 F. Supp. 2d 218, 226 (S.D.N.Y. 2010), Defendants maintain that TOMRA remained engaged with them in the process of seeking to remedy the perceived deficiencies right up until the time that TOMRA commenced this litigation. A question of fact thus exists as to the reasonableness of Defendants' view in this regard and as to when it became clear that the performance issues with the machines could not be remedied. That question cannot be resolved here because "[a]bsent exceptional circumstances, whether an action has been taken within a 'reasonable time' is a question of fact." *RIJ Pharm. Corp. v. Ivax Pharms., Inc.*, 322 F. Supp. 2d 406, 413 (S.D.N.Y. 2004). Nothing about the facts in the record suggest that

such exceptional circumstances exist here and so this defense is best resolved at the time of trial.

Plaintiff also suggests that Defendants' long term use of the machines precludes revocation. *See* Pl.'s Mem. of Law at p. 12 (citing N.Y. U.C.C. Law § 2-608(2)); Pl.'s Reply at pp. 7-8. Some authority supports Plaintiff's position that long term possession and use resulting in a diminution in value "is completely at odds with a revocation of acceptance." *New York Trans Harbor LLC v. Derecktor Shipyards Conn., LLC*, 841 N.Y.S.2d 821 (N.Y. Sup. Ct. Kings Cnty. 2007) (citing *Sobiech v. Int'l Staple & Mach. Co.*, 867 F.2d 778, 780-781 (2d Cir. 1989) & *Computerized Radiological Servs. v. Syntex Corp.*, 786 F.2d 72, 75-76 (2d Cir. 1986)). That analysis is also tied to a reasonableness inquiry. *See Computerized Radiological Servs. v. Syntex Corp.*, 786 F.2d at 75 (requiring buyer to act with "reasonable dispatch"). Defendants' use may well support an ultimate finding that they unreasonably delayed in seeking to exercise their right to revoke, but given the factual issues identified in the preceding paragraph, the Court cannot make that decision on the present record.

### F. Damages

In the event that it is denied summary judgment on the merits, Plaintiff's Motion also seeks to limit certain categories of damages sought by Defendants. As outlined below, summary judgment is also denied with respect to this argument.

First, Plaintiff contends that damages should be limited based on Defendants' failure to mitigate their losses. Pl.'s Mem. of Law at pp. 33-34. The question of whether a party injured by a breach of contract reasonably mitigated its damages is

typically viewed as a question of fact.  *Cappiello v. ICD Publications, Inc.*, 458 F. App'x 26, 29 (2d Cir. 2012); *Tynan Incinerator Co. v. Int'l Fid. Ins. Co.*, 117 A.D.2d 796, 797 (2d Dep't 1986).  Here, Defendants eventually purchased new equipment, though the record suggests that that was not done specifically to replace TOMRA's machines.  *See, e.g.*, Dkt. No. 120-2, Grant Decl. at ¶ 10 ("CLYNK did not order the three Anker Andersen machines for the purpose of replacing existing TOMRA Systems at that time.) & ¶ 11 ("The same is true with respect to CLYNK's order of four additional Anker Andersen machines in September 2018.").  Defendants do not expressly rely on that purchase as evidence of mitigation, instead arguing that they were unable to effectively mitigate their damages sooner because doing so was impractical for reasons including the cost of replacement and the lead time to obtain new machines and put them into operation.  Defs.' Mem. of Law at pp. 14 & 39; Pl.'s Resp. to Defs.' Rule 56.1 St. at ¶ 205.  However, the evidence that Defendants did eventually incur the cost of purchasing the new machines and apparently relied on the TOMRA machines while awaiting new equipment, presents a significant question about whether the delay in not doing so sooner was reasonable.  That question, however, is fact dependent and cannot be resolved on this record.

Next, Plaintiff seeks summary judgment precluding an award of lost profits as being incapable of precise calculation.  Pl.'s Mem. of Law at pp. 34-35.  According to Plaintiff, any claims of lost profit are purely speculative.  *Id.* at p. 34.  This too presents a factual question that should not be resolved on summary judgment.  Defendants point to specific category of damages, revenue lost, as distinct from lost profit, when certain

beverage containers which were supposed to be rejected by the machines were not. Grant Decl. at ¶ 16.   Though they do not offer a specific accounting of the precise amount of lost revenue, that alone does not preclude ultimate recovery.   "Although [Defendants] may ultimately have difficulty establishing lost profits damages that are not speculative, the issue raises questions of fact that cannot be resolved at summary judgment."   *Koch Indus., Inc. v. Aktiengesellschaft*, 727 F. Supp. 2d 199, 220 (S.D.N.Y. 2010).   If, at trial, Defendants can offer only purely speculative loss figures, they will be unable to sustain this claim.

Finally, TOMRA contends that it is entitled to summary judgment insofar as Defendants seek to recover damages suffered by Hannaford Supermarkets.   Pl.'s Mem. of Law at pp. 35-36.   Defendants, while seeking to reserve certain rights, now advise that they willing to withdraw what it characterizes as its claims for third party damages. Defs.' Mem. of Law at p. 40.   Plaintiff objects to permitting withdrawal of this claim without prejudice.   Pl.'s Reply Mem. of Law at p. 30.   Given Defendants' representation that it does not intend to pursue this damages claim, the Court declines to address the merits of the argument raised by Plaintiff.[10]   Should Defendants choose to offer evidence regarding these damages at trial, Plaintiff retains all its rights to oppose such a claim.

---

[10] It is hard to envision how Plaintiff is prejudiced by Defendants' desire to eliminate one category of damages they seek against Plaintiff, even if that dismissal is without prejudice to some speculative right to seek such damages in the future.   It seems highly unlikely that Defendants would have litigated this claim to the near end of this action only to seek to start afresh in a new action.

## IV. CONCLUSION

**ACCORDINGLY**, it is hereby

**ORDERED**, that Plaintiff's Motion to Dismiss Defendants' counterclaims is **DENIED**; and is further

**ORDERED**, that Plaintiff's Motion for Summary Judgment is **DENIED**; and it is further

**ORDERED**, that Plaintiff's claim for unjust enrichment is **DISMISSED sua sponte**; and it is further

**ORDERED**, that the Clerk of the Court serve this Memorandum-Decision and Order upon the parties.

Dated: September 18, 2023
      Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge